Chrystie *v.* Phyfe.

CHRYSTIE and wife *vs.* PHYFE and others.

A testator, by his will executed previous to the revised statutes, after providing for his two eldest daughters, gave to his daughter M. a house and lot in Partition street in the city of New York, to her and to " her heirs and assigns forever," with the qualification, however, that if she died " unmarried and without leaving a child her surviving," then all her share of his estate, both real and personal, was to go to her sisters, or their children, as the case might be. *Held*, that M. took an estate in fee, defeasible by law in the event of her dying before her father, and defeasible by will in the event of her dying after him, leaving no issue. And M. having afterwards married, and joined with her husband in conveying the house and lot in Partition street to the defendant P. and died, leaving issue, E. the wife of the plaintiff; *held further*, that her estate in fee vested and became absolute in her, and as a consequence in P. her grantee; and that upon M.'s death the property did not go to E. CLERKE, J. dissented. *Not a correct summary of the case*

APPEAL by the defendants from a judgment rendered at a *Vide p. 219 bottom* special term, after a trial at the circuit. The action was for the recovery of the possession of a house and lot, now known as No. 193 Fulton street, in the city of New York, but formerly known as lot No. 32 Partition street. The plaintiffs claimed to recover the same in the right of Elizabeth L. Chrystie, who is the daughter and only surviving child of Margaret Thornton Ludlow, wife of Charles Ludlow, (formerly Margaret Thornton Mackaness,) under and by virtue of the will of Thomas Mackaness, (father of said Margaret, and grandfather of said Elizabeth,) who in 1807 died seised of the prem-

ises; and the defendants claimed to be the absolute owners thereof, by title derived from said Charles Ludlow and wife, Mrs. Ludlow having as they alleged acquired, under and by virtue of said will, an estate in fee simple absolute in said premises. The complaint alleged, 1st. That Thomas Mackaness being seised and possessed in fee of the house and lot No. 32, adjoining Partition street, in and by his last will and testament, dated the 15th of February, 1806, and executed with the solemnities then prescribed by law for devising and passing real estate in fee, devised said house and lot to his daughter Margaret Thornton Mackaness, *her heirs and assigns forever;* but if his daughter should die unmarried and without leaving a child her surviving, then said testator gave, devised and bequeathed said house and lot, and also all such other parts of his real and personal estate as by that his will were given, devised and bequeathed to her, to his daughters Elizabeth Harvey and Mary Prowitt, their heirs and assigns forever, in equal parts to be divided; but if his said daughter Margaret should die either before or after his decease, leaving lawful issue, then he gave, devised and bequeathed the part and parts, share and shares, of his real and personal estate, by that his will given, devised and bequeathed to her, unto such child or children, if one only, to him or her solely, and his or her heirs and assigns forever, if more than one, to them, their heirs and assigns forever, equally to be divided between them, share and share alike; and in case his said daughter Margaret should die without lawful issue, and if at her death either of his said daughters, Elizabeth Harvey and Mary Prowitt, should then be dead, and should have a child or children then living, the said testator gave, devised and bequeathed the part or parts, share or shares, of his real and personal estate, devised and bequeathed to their respective mothers, so being dead, to such child or children, if one only, to him or her the whole, and to his or her heirs and assigns forever, and if more than one, to them, their heirs and assigns forever, in equal parts to be divided. 2d. The death of the testator shortly after the making of his will, leaving it in full force, and in the seisin and posses-

sion of the premises.  3d.  The proving and admitting to probate of the will in due form of law.  4th. That by virtue of the will, said Margaret Thornton Mackaness entered into possession of the premises, and became seised thereof for the estate, and became subject to the devises, &c. in the events and upon the happening of the several contingencies in the said will mentioned.  5th. That the said Margaret afterwards intermarried with Charles Ludlow, by whom she had lawful issue, viz. three children, the eldest of whom is Elizabeth L. Chrystie, (one of the plaintiffs ;) and of the other two, one was stillborn, and the other survived only a few days after its birth. 6th. The death of Charles Ludlow in 1839, and of his widow, Margaret Thornton Ludlow, on the 27th of June, 1853. 7th. That the plaintiffs were married in 1838, and have four children living, the eldest aged 14 years.  8th. That upon the death of Margaret Thornton Ludlow, the plaintiff, in the right of the said Elizabeth L. Chrystie, under and by virtue of said will, became seised of an estate of inheritance in fee simple in said premises, and lawfully entitled to the possession thereof, said premises being now known by the street number 193 Fulton street, and being described in the complaint by metes and bounds.  9th. That Duncan Phyfe, the defendant, is in possession of the premises, claiming title thereto, or some interest therein, or lien thereon, but unlawfully ; and that possession thereof has been demanded of him by the plaintiffs, but that he has refused or neglected to deliver such possession to them, or either of them ; wherefore the plaintiffs demand judgment, that the defendant be adjudged to surrender the possession of the said premises to them, and to pay to them damages for the unlawful withholding of the same to the sum of $10,000, with the plaintiffs' costs and charges.  The answer of the defendant Duncan Phyfe stated, 1st. That the defendant, on information, advice and belief, claimed and insisted that the said Margaret Thornton Mackaness, under and by virtue of the will of the said Thomas Mackaness, and under and by virtue of the devise to her in the complaint mentioned and of other provisions in said will contained, became seised of, and entitled to, a good, absolute and

indefeasible estate of inheritance in fee simple in the premises in the complaint described ; and being so seised and entitled, entered into the lawful possession of said premises, and became lawfully seised and possessed thereof, as the absolute owner thereof. 2d. That the said last will and testament was in the words following—and the same was then set forth in *hæc verba.* 3d. The defendant, on information and belief, denied that said Margaret Thornton Mackaness entered into the possession of the said premises, and became seised thereof, for any such estate, subject to any such devises, &c. as were for that purpose mentioned in the complaint. 4th. That said Margaret having afterwards intermarried with Charles Ludlow did, with her said husband, by their deed dated the 17th of May, 1815, in consideration of $9250 to them paid, grant and convey to the defendant the said premises in fee, which deed was duly acknowledged and recorded, and which the defendant was ready to produce, &c. 5th. That the defendant thereupon entered into possession of the premises as the lawful and absolute owner thereof, and has continued in the quiet and undisturbed possession and enjoyment thereof until the present time. 6th. Defendant admitted, that after the making of said will, said Margaret intermarried with Charles Ludlow, and subsequently departed this life, having survived her husband and leaving issue, viz. Elizabeth L. Chrystie, one of the plaintiffs ; but defendant had no knowledge or information sufficient to form a belief as to the allegation in the complaint concerning the births or deaths of the children of said Margaret, &c. 7th. The defendant denied that the plaintiffs, after the death of said Margaret Thornton Ludlow, did, in the right of said Elizabeth L. Chrystie, and under and by virtue of said will, become seised of or entitled to said premises ; but he averred that he, the defendant, alone was seised in his own right of the premises in fee simple absolute ; and he denied any unlawful withholding of the possession of said premises from the plaintiffs, or either of them, &c. The defendant Duncan Phyfe having died in the month of July, 1854, leaving a last will and testament, whereby he devised all his real estate equally to and among his children, viz. Mary Whit-

Chrystie *v.* Phyfe.

lock, Eliza Vail, wife of William Vail, William Phyfe, James D. Phyfe and Edward D. Phyfe, in fee, the action was continued, on the petition of the plaintiffs, by order of the court made with the consent of the attorney for said devisees, against them as defendants therein. The action was tried on the 16th of January, 1855, before Hon. Wm. Mitchell, one of the justices of this court, without a jury—a trial by jury having been duly waived. The plaintiffs proved the death of Charles Ludlow in October, 1839, and of Mrs. Ludlow on the 27th of June, 1853; also that they had three children, one of whom was stillborn, and the other lived but a few days, and both died before their father; also that Mrs. Chrystie was the second child, and that Mr. and Mrs. Chrystie were married in October, 1838, and have living four children, and rested their case. The defendants then produced and gave in evidence the last will and testament of Thomas Mackaness, dated the 15th of February, 1806, in the words set forth in the answer, and also a conveyance dated the 15th day of June, 1815, between Charles Ludlow and wife of the first part, and Duncan Phyfe, the father of the defendants, (except William Vail,) of the second part, of the premises in question, which conveyance was set forth *in hæc verba.* It was for the consideration of $9250, and grants the premises to said party of the second part, his heirs and assigns forever, to have and to hold the same as fully and absolutely as the said Thomas Mackaness was seised or possessed at the time of his death, with full covenants, on the part of said Charles Ludlow of seisin and power to convey, in his said wife Margaret, and of warranty, &c.; and it was acknowledged by the grantors, and by Mrs. Ludlow, on a private examination before W. Ross, master in chancery, on the 17th of June, 1815, and recorded in the register's office on the 1st of July, 1815. It was admitted by the plaintiffs' counsel, that the premises described in this deed were the same as those described and devised in the fourth article of the will, and demanded in the complaint. The defendants' counsel insisted and prayed the court to rule and decide, 1st. That Margaret Thornton Mackaness, upon the true construction of the will, took under and by virtue

thereof an absolute and indefeasible estate of inheritance in fee simple in the premises in question. 2d. That under and by virtue of said deed of Charles Ludlow and said Margaret his wife, to Duncan Phyfe, the said Phyfe acquired the like estate in said premises. 3d. That under and by virtue of the will of Duncan Phyfe, referred to in the plaintiffs' petition for the revival of the action, the present defendants, devisees of said Duncan, acquired the like estate in said premises; and that, therefore, the defendants in this action were entitled to judgment in their favor, with costs. The judge refused to decide either of the propositions as prayed; but, on the contrary, decided that, under the will of Thomas Mackaness, said Margaret did not take an absolute and indefeasible estate of inheritance in fee simple in the premises in question; and that Duncan Phyfe, under the deed above mentioned, did not acquire such estate in fee simple in said premises; and that although the defendants, William Phyfe and the other devisees in the will of Duncan Phyfe, acquired under his will all his title and estate, and all the title and estate of said Margaret Thornton Mackaness in the premises, they did not acquire an estate in fee simple absolute therein; and that the plaintiffs were entitled to judgment, as demanded in their complaint. The defendants' counsel excepted to the several refusals of the justice to rule and decide as above prayed, and also to the several decisions made by him. Judgment was then given by said justice for the plaintiffs, that they recover possession of the premises claimed in said complaint, with costs; with leave to the defendants to appeal to the general term of this court, without security, and that all proceedings on the part of the plaintiffs be stayed until said appeal was heard and decided.

B. F. Butler, for the appellants. I. Upon the true construction of the fourth article of the will of Thomas Mackaness, his daughter Margaret Thornton Mackaness acquired, under and by virtue of said will, an estate of inheritance, in fee simple absolute, in the premises in question. (1.) The will is to be construed according to the general intent of the testator, which, if

Chrystie *v.* Phyfe.

not contrary to some positive rule of law, must prevail, although at the expense of a particular intent ; and although, in giving effect to it, it may be necessary to transpose, supply, or reject words and limitations. (1 *Jarman on Wills*, 420, 422, *and cases there cited. Pond* v. *Bergh,* 10 *Paige,* 152, *and cases cited. Inglis* v. *The Trustees of the Sailors' Snug Harbor,* 3 *Peters' S. C. R.* 117, 118. *Finlay* v. *King's Lessee, Id.* 377, 388. (2.) In order to ascertain this general intent, we are not to look exclusively to the fourth article, in which the devise is contained, but are to examine and consider all the parts and provisions of the will ; and in the interpretation of the terms and phrases used by the testator to demonstrate his intent, they are to receive the construction given to them by the law in force at the time the will was made and took effect. (*Covenhoven* v. *Shuler,* 2 *Paige,* 130. *Crosby* v. *Wendell,* 6 *id.* 548. *Kingsland* v. *Rapelye,* 3. *Edw. Ch. R.* 5. *Schoonmaker* v. *Sheely,* 3 *Denio,* 485, *affirming S. C.,* 3 *Hill,* 165. *Brown* v. *Lyon,* 2 *Seld.* 419.) (3.) By the will it appears that the testator had only three children, his daughters Elizabeth Harvey and Mary Prowitt, married women, and his daughter Margaret, then unmarried ; and that in distributing among them his real estate, situated in the state of New York, his direct and primary devises to his married daughters were *during their natural lives only,* while those to his daughter Margaret were *in fee.* (4.) So, too, the remainders and contingent or executory estates or interests given to his daughter Margaret, in the several contingencies mentioned in the will, are in every instance *in fee,* while some of the like gifts, as well as of his primary gifts to his daughter Mary Prowitt, were *during her natural life* only, and for the most part through the intervention of *trustees.* (5.) The testator also makes his daughter Margaret, after the death of his widow, the sole devisee and legatee of the homestead in New Windsor, with all the stock, &c. thereon, and of all his household furniture. (6.) By these several discriminating provisions in favor of his daughter Margaret, the testator shows a plain intent to make her the *absolute owner and mistress* of that share of his estate which should actually

come into her possession, except so far as this absolute ownership and dominion might be modified, by the qualifying provisions contained in the fourth article. (7.) The fourth article begins with a devise of the house and lot in question to Margaret Thornton Mackaness, *in fee simple absolute*, in clear and appropriate terms. The estate thus given to her must remain in her, unless, on the true legal construction of the qualifying clauses (three in number) which immediately follow it, and by the happening of the events therein provided for, such estate in fee simple absolute be defeated or be cut down to some less estate. (8.) The first of these qualifying clauses is in these words : " But if my said daughter Margaret Thornton Mackaness shall die unmarried and without leaving a child her surviving, then I give, devise and bequeath the said last mentioned dwelling house and lot of ground, with the appurtenances, and also all such other parts of my real and personal estate as by this my will are given, devised and bequeathed to her, to my daughters Elizabeth Harvey and Mary Prowitt, their heirs and assigns forever, in equal parts to be divided." It is not necessary to inquire whether or not the limitation over in this clause, to Elizabeth Harvey and Mary Prowitt, is valid by way of executory devise ; because no question now arises, or ever can arise under this limitation over, Margaret Thornton Mackaness having *married*, and having at her death left a *child*, viz. Mrs. Elizabeth L. Chrystie, her surviving. (9.) The like remark applies to the third and last of the qualifying clauses, which connects itself by its subject matter with the first clause above quoted, and in addition to the contingency of Margaret's dying without lawful issue, provides for a contingency not before expressed, viz. that of Elizabeth Harvey and Mary Prowitt, one or both of them having died *before* Margaret, but leaving children, as follows : " And in case my said daughter Margaret Thornton Mackaness shall die without lawful issue, and if at her death either of my said daughters Elizabeth Harvey and Mary Prowitt shall then be dead, and shall have a child or children then living, I give, devise and bequeath the part or parts, share or shares, of my real and personal estate, by this

my will devised and bequeathed to their respective mothers, so being dead, to such child or children, if one only, to him or her the whole, and to his or her heirs and assigns forever, and if more than one, to them, their heirs and assigns forever, in equal parts to be divided." Whether or not Elizabeth Harvey and Mary Prowitt, or either of them, died before Mrs. Ludlow, (testator's daughter Margaret,) and if so, whether they or either of them left children or not, did not appear at the trial; nor does any question now arise under this clause. (10.) The second of these clauses, being that on which the plaintiffs rely, is in the following words: "But if my said daughter Margaret Thornton Mackaness shall die, either before or after my decease, leaving lawful issue, then I do give, devise and bequeath the part and parts, share and shares, of my real and personal estate, by this my will given, devised and bequeathed to her, unto such child or children, if one only, to him or her solely, and his or her heirs and assigns forever, if more than one, to them, their heirs and assigns forever, equally to be divided between them, share and share alike." The claim of the plaintiffs, that by this clause the estate *in fee* before given to Margaret Thornton Mackaness, is cut down to a mere estate *for her life*, with remainder in fee to her child or children *as purchasers*, is utterly repugnant to the general intent of the testator, as manifested by the language of the clause and of other parts of the will. If this clause be interpreted as a gift by the testator to the issue or children of Margaret as *purchasers*, and as reducing her estate to an estate *for her life*, the words of inheritance so carefully introduced into the devise at the beginning of the article, are rendered entirely nugatory and senseless. A construction producing such a result will not be given, if it be possible, consistently with the language used, and the rules of law to avoid it. If the testator had intended that his daughter Margaret should only have an estate *during her life* in the house and lot in question, it is inconceivable that he should not have said so in explicit terms, as in the cases of the devises to his daughter Elizabeth, and to his son-in-law Thomas Harvey, in article first, and to the trustees of his daughter Mary, in ar-

ticles second and eighth. This view is fortified by the fact, that in several other instances besides those above referred to, the testator in his will gave merely life estates or interests ; thus showing that the distinction between life estates and estates in fee was constantly present to his mind, and repeatedly acted on by him in the making of his will. The main object of the testator in this clause manifestly was, to provide in advance for the contingency of his daughter Margaret dying before him, and to prevent a lapse of his devises and bequests to her, in which case the property devised and bequeathed to her would go to all his heirs at law and next of kin, even though she might have died leaving a child or children. Such a lapse he intended to prevent, and in the event of her death before him, leaving issue, to secure to such issue, without the making of a new will, all those portions of his estate which he had specifically devised or bequeathed to her. Hence the careful insertion of the word "before," in the introductory part of this clause. In so framing the clause, as to provide not only for the contingency above mentioned, but also for the contingency of his daughter Margaret dying *after* his decease, leaving issue, the testator did not intend to nullify the devise in fee before made, or to cut down the estate of inheritance thereby given, to an estate for life ; but he intended to reiterate and confirm such prior devise and estate. He says in this clause more fully, what, in brief technical terms, he had expressly said in the first words of the article, and what was implied in the first and third of the qualifying clauses, viz. that his daughter Margaret should have, in the house and lot in question, *an estate of inheritance*, capable of being transmitted by descent to her posterity, as her *heirs* and *representatives*. The like unnecessary and inartificial verbiage occurs in the sixth article, where the testator, after having given the use of all his household and other furniture, plate, &c. to his wife for life, bequeaths the same, immediately after his wife's decease, to his daughter Margaret, "*her executors, administrators and assigns* forever, solely at *her or their own disposal ;*" and then still further to manifest his intent, that she should have an absolute estate therein, proceeds to provide,

that if his said daughter Margaret shall, at the decease of his wife, be dead, leaving a child or children then living, this furniture, &c. shall go to such child or children. The will abounds with tautological and unnecessary provisions, and though apparently drawn by a lawyer, or by one who had access to the English books of precedents of wills, yet legal terms are frequently inaccurately used, and the sense frequently obscured by the cumbrous phraseology employed by the scrivener. The testator having, immediately after the devise to his daughter Margaret of an absolute estate in fee in the house and lot in question, inserted the clause containing the devise over, in the event of her dying unmarried, and without leaving a child her surviving, seems to have been apprehensive that it might possibly be inferred, that he did not mean to give her an estate of inheritance, *in the event of her leaving* a child or children her surviving ; and to exclude any such inference, he therefore inserts the clause in question, *as a qualification of the limitation over in the preceding clause.* Its meaning is simply, that if his daughter, instead of dying *without* a child her surviving, should die with a child or children her surviving, the estate of inheritance, given in the first words of the article, *should continue as first provided*—that is, a fee simple absolute, and as a consequence thereof the house and lot in question remain to her, *her heirs and assigns forever.* Clauses similar to the one now in question are found in the first and second articles of the will, following the express devises of legal or equitable estates to the testator's daughters Elizabeth Harvey and Mary Prowitt, and to Thomas Harvey, *during their natural lives ;* and in every such case, the provision is necessary and appropriate. Having thus had occasion to use such phraseology, the draftsman seems to have supposed it proper to repeat it in connection with the subsequent devises, and even when the reason therefor had ceased. In the clause in question, the intent to *confirm* the estate of inheritance before given to his daughter Margaret, is clearly manifested by the care with which the testator gives to the child or children of his said daughter Margaret the real estate before devised, with inheritable words to her in precisely

the same proportions as such child or children would take the same from her under the statute of descents; if one only, to him or her solely ; if more than one, to and among them equally, share and share alike. The foregoing is the fair and rational construction of the clause in question. It makes all the parts of the fourth article consistent with each other; and it is the only construction which will give effect to the clear and positive words with which the article begins, whereby the testator manifests his *general intent* to give to his daughter Margaret, in the house and lot in question, not a mere estate for *her life*, such as he had given to her sisters in the premises so devised to them, but *an estate of inheritance in fee simple.* This *general intent,* thus positively expressed, is not to be overthrown and defeated by mere construction or inference ; and so far as the second qualifying clause, on which the plaintiffs rely, may seem to indicate a *particular intent* inconsistent therewith, it is to be rejected in the construction of the will. (*Collet* v. *Lawrence,* 1 *Ves. jr.* 268, 269. 1 *Jarman on Wills,* 420, 422, *and other authorities cited above.*) (11.) The claim of the plaintiffs, that by the clause in question the estate *in fee* before given to the testator's daughter Margaret is cut down to a mere estate *for her life,* with remainder in fee to her child or children as *purchasers,* is not only repugnant to the general intent of the testator before manifested, but is also directly opposed to the true *legal construction* of the article, according to which Miss Mackaness took, from the beginning, an estate in *fee simple absolute.* An estate *in fee* having been expressly and clearly given to Miss Mackaness by the introductory part of the article, the clause in question must be construed in subserviency to, and in accordance with, such prior devise. The estate in fee already given will not be cut down to a mere estate for life, by confused and repugnant phraseology in a subsequent part of the article. (*Brant* v. *Gelston,* 2 *John. Cas.* 384. *Newkerk* v. *Newkerk,* 2 *Caines,* 345, 352-6. *Jackson* v. *Bull,* 10 *John.* 19. *Jackson* v. *Delancy,* 13 *id.* 537. *Jackson* v. *Robins,* 15 *id.* 169 ; *S. C.,* 16 *id.* 537. *Jarman on Wills,* 420–22, *and other authorities cited. Kingsland* v. *Ra-*

Christie *v.* Phyfe.

*pelye,* 3 *Edw. Ch. R.* 11. *Weld* v. *Williams,* 13 *Metc.* 486.) If the devise in question is to be construed as impairing or affecting in any way the devise in fee simple absolute before made to Miss Mackaness, it can only be in one of two ways— either, first, by reducing her estate to a *fee tail,* or secondly, by reducing it to a *qualified, base or determinable fee,* liable to be defeated by her dying without issue living at her death. Upon either of these constructions Miss Mackaness acquired, by virtue of the will, an estate in *fee simple absolute;* in the first case she took such estate from the beginning, in the second she acquired it by the event. This will be shown under the next two propositions. (12.) Considered by itself, the clause in question, under the law as it existed at the testator's death, and according to which it must be construed, (*Jackson* v. *Bellinger,* 18 *John.* 368, 381, 382,) gave to Miss Mackaness an estate in fee simple absolute: that is to say, the words "lawful issue," "child" and "children," used in this clause, created by the English law as modified by our statute of descents, an estate tail general, which by our statute concerning entails, in force in 1807, was converted into a *fee simple absolute.* The words "shall die leaving lawful issue," as used in this clause, import, according to their settled legal sense, an *indefinite continuance of issue,* and thus create an estate tail in *real* and an absolute estate in *personal* estate. This was the established law of this state prior to the enactment of the revised statutes of 1830. (*Paterson* v. *Ellis,* 11 *Wend.* 259, and cases cited by Savage, Ch. J. 277–294.) The words "lawful issue," "child" and "children," are each words of procreation, and they are here used in reference to one particular person from whose body heirs are to come: there is, therefore, every requisite for the creation of an *estate tail.* (2 *Black. Com.* 114, 115.) The words "lawful issue," as used in this clause, are evidently words of *limitation* and not of *purchase;* and so are the words "child or children," especially as they are all used of an unmarried person. (*Goodtitle* v. *Otway,* 2 *Wils.* 6. *Rex* v. *Greer,* 2 *id.* 322–4. *Parker* v. *Bowdoin,* 1 *Sumner,* 359, and cases cited by Story, J., 367–372. *Wheatland* v. *Dodge,* 10 *Metc.* 502. *Weld* v. *Wil-*

*liams,* 13 *id.* 486.) The limitation in this clause to "the child or children" of Miss Mackaness, if one only, to him or her solely, and if more than one, to them equally, share and share alike, is in exact conformity to the first rule in the statute of descents of February 23d, 1786. (1 *Kent & Radc.* 44, § 3. 1 *R. L. of* 1813, *p.* 52, § 3. 3 *R. S.* 1*st ed., App. p.* 48.) By the last clause of the first section of the same statute, (*supra,*) every person who, if that act and the former act of 1782 abolishing estates tail had not been passed, would have become seised in fee tail of any lands, &c., instead of becoming so seised, "shall be deemed and adjudged to become seised thereof in fee simple absolute;" and this provision operates on the estate tail as soon as it becomes vested in interest. (*Van Rensselaer* v. *Poucher,* 5 *Denio,* 35.) (13.) If the words "child or children" in the clause in question are to be construed as words of *purchase* and not as words of *limitation,* then the true effect of such construction of said clause—when the same is taken in connection with the ultimate limitation over, in the event of Margaret's dying without leaving a child her surviving, to her sisters Elizabeth and Mary, or their children—is not to cut down the estate in fee before given to Margaret to an estate for her life, but only to reduce the estate from a fee simple absolute to a *base* or *determinable fee,* liable to be defeated or determined by the happening of that contingency. It did not happen; on the contrary Margaret died, leaving a child, (Mrs. Chrystie,) whereby the estate in fee before given became or remained absolute and indefeasible. The clause in question is to be considered, not only in connection with the devise in fee to Margaret, with which the article begins, but more especially in connection with the limitation over to her sisters, which it immediately follows, and by which it was evidently suggested. When thus considered, the clause in question must be regarded as merely a mode of giving further expression to the original devise of the fee to Margaret, and as intended to exclude any design to disinherit her, in the event of her leaving a child or children her surviving. The first and second qualifying clauses, thus construed, create together a limitation over of the fee de-

Chrystie *v.* Phyfe.

vised to Margaret, to the sisters Elizabeth and Mary in the event described. Still further to show the leading purpose in the testator's mind, he proceeds, by the third and last of the qualifying clauses, to provide for the additional contingency of Margaret's dying without lawful issue, but not until *after* the death of her sisters Elizabeth and Mary, one or both of them. The true effect of the three qualifying clauses—supposing the words "child or children" not to be, in the sense of the law, words of *limitation*—therefore, is merely to reduce the estate in fee, first given to Margaret, to a base or determinable fee, liable to be defeated on the single event of her dying without leaving a child her surviving, but in the lifetime of her sisters Elizabeth and Mary, or of their children, or the child of one of them—in which event the inheritance is to go over in fee simple absolute to Elizabeth and Mary, or their children, as the case may be. The contingency by which the testator intended that the estate in fee simple absolute, first given to his daughter Margaret, should be defeated, viz. *her dying without leaving issue living at her death,* having never happened, but she having died leaving a child her surviving, her estate was thereby freed from its liability to be defeated, and became and remained absolute and indefeasible. It is the ordinary case of an estate in fee, with a valid limitation over, by way of executory devise, which becomes absolute and indefeasible by the non-happening, and the impossibility of its ever happening, of the event on which alone the limitation over is to take effect. (14.) If the clause in question, considered by itself or in connection with what precedes or follows it, can be construed as reducing the devise to Miss Mackaness to an *estate for her life,* or other freehold, then by virtue of the rule in *Shelley's case,* (in force at the testator's death,) she took under the subsequent limitation in this clause, to her child or children, an estate in *fee simple absolute.* (4 *Kent's Com.* 214–233. *Kingsland* v. *Rapelye,* 3 *Edw.* 1–21, and cases cited by the vice chancellor. *Barlow* v. *Barlow,* 2 *Comst.* 386. *Brown* v. *Lyon,* 2 *Seld.* 419.) In the application of the rule to the present case, it is unnecessary to decide

whether the limitation to the child or children of Margaret is in fee simple or in fee tail, for in the latter case it was turned by our statute into an estate in fee simple, while in the former she would take such an estate *per formam doni.*

II. Either of the constructions above proposed will effectuate the general intent of the testator, viz. that his daughter Margaret should have an estate in fee in the house and lot in question. Either of them is, therefore, to be preferred to a construction which defeats that intent; nor is either of them liable to any valid objections. (1.) There is no such repugnance between the devise in the beginning of the fourth article, of an estate to Margaret, *her heirs and assigns* forever, and the clause in question, as to require or justify the rejection of the preceding express devise in fee. The rule that when the latter part of a will is inconsistent with a prior part, the latter part shall prevail, as denoting the last intention of the testator, has no foundation in reason, and is never resorted to by the courts if it be possible to reconcile the two provisions with each other. There must be an entire incompatibility or repugnance between the two provisions, to justify the application of the rule. (*Sherret* v. *Bentley,* 2 *Myl. & Keen,* 155. *Sweet* v. *Chase,* 2 *Coms.* 73.) No such incompatibility or repugnance exists here; but, on the construction above given, the several clauses, in legal effect as well as in intent and design, may be reconciled with each other. (2.) If the will be found, on its true legal construction, to create an estate tail in Margaret, this does not militate against the general proposition on which the defendants insist, viz. that Margaret acquired, under the will, an estate in *fee simple absolute,* but furnishes a strong argument in support thereof, because by our statute such estate tail was turned into an estate in fee simple absolute. So, too, if by the law, as it stood at the testator's death, Margaret took, under the rule in *Shelley's case,* an estate in fee. Such a construction equally supports the defendants' claim. And in each of these cases the testator's general intent that his daughter Margaret should have an estate in fee simple absolute, is preserved and effectuated. (3.) The limitation over of the fee devised to Margaret, to her

Chrystie v. Phyfe.

sisters Elizabeth and Mary in fee, in the event of her dying without a child or children her surviving, supposing it good by way of executory devise, does not militate against the testator's general intent, as above insisted on. Such a limitation over of a fee on a fee, by way of executory devise, does not, either in the mind of a testator or in the sense of the law, cut down the estate of the first taker to a life estate; it still remains an estate in fee, and with all the attributes of a fee simple absolute—except that it is liable to be defeated or determined by the happening of the contingency on which the limitation over is to take effect. There are no words of description, nor any other words to be found in the clause in question, or in the fourth article, or in any other part of the will, indicating any intent or desire on the part of the testator to provide for the children of his daughter Margaret as purchasers, or in any other way than as her heirs and representatives. The testator's primary and general intent, that his daughter Margaret should take an estate of inheritance in the house and lot in question, is not contradicted by imputing to him the further intent, that on the happening of a specified contingency, her estate should determine, and the premises go to her sisters or their representatives. On the contrary, as she left a child her surviving, her estate, on this hypothesis, became absolute and indefeasible; and the testator's general intent is preserved and upheld.

III. Under and by virtue of the conveyance in fee, by Charles Ludlow and Margaret Thornton Mackaness his wife, of the 17th of June, 1816, stated in the pleadings and proved on the trial, Duncan Phyfe acquired an absolute estate in fee simple in the premises in question, which passed by his will, dated January 24, 1854, to the present defendants in the action.

IV. The defendants were entitled to judgment in their favor; and the judgment rendered on the trial of the action should therefore be reversed, and the complaint be dismissed with costs, and a suitable allowance for counsel fees to the defendants.

M. S. Bidwell, for the plaintiffs. I. The devise to the child or children of the testator's daughter, Margaret Thornton

Mackaness, (afterwards Mrs. Ludlow,) was a valid executory devise. (1.) If it had been a devise to any one else than her descendants, there would be no doubt of its validity; it would not be void as being upon too remote a contingency, nor as being repugnant to the estate given to her. It was not too remote, because it was to take effect, if at all, at her death. She must have had issue then if she ever had issue. It was, in this respect, totally different from a failure of issue, which might not take place at her death, but might take place at an indefinite future period. It was not repugnant to the estate given to her, because that was a defeasible estate; it is the ordinary case of an estate in fee, subject to an executory devise. The whole doctrine of executory devises is founded on the validity of a testamentary provision, by which an estate previously given in fee may be defeated and displaced on a contingency, and a new estate substituted in its place. This constitutes the distinction between an executory devise and a contingent remainder. (*Fosdick* v. *Cornell,* 1 *John.* 440. *Ex'rs of Moffat* v. *Strong,* 10 *id.* 12. *Jackson ex dem. Staats* v. *Staats,* 11 *id.* 337. *Anderson* v. *Jackson ex dem. Eden,* 16 *id.* 382. *Barker* v. *Barker,* 2 *Sim.* 249. *Sumner* v. *Partridge,* 2 *Atk.* 47. *Doe ex dem. Barnfield* v. *Wetton,* 2 *Bos. & Pull.* 324. *Waldron* v. *Gianini,* 6 *Hill,* 601. *Jackson* v. *Chew,* 12 *Wheat.* 153. 4 *Kent's Com.* 265, 268–278.) (2.) The fact that the gift over is to her child or children, instead of its being to a third person, does not render the executory devise ineffectual. It is not a limitation to which the rule in *Shelley's case* applies. It is not a gift to her heirs at law or to her issue, but to her *child or children.* These words, *prima facie,* at least, are words of purchase, not words of limitation; they are words to designate the person to take as devisee, not to denote the quantity of estate given. (*Sisson* v. *Seabury,* 1 *Sumn.* 257. *Jeffrey* v. *Honeywood,* 4 *Mad.* 398. *Goodright ex dem. Dorking* v. *Dunham, Doug.* 264. *Lees* v. *Mosley,* 1 *Yo. & Coll. Exch. Rep.* 606, 607. *King* v. *Becke,* 15 *Ohio R.* 561.) A fee simple having been given by the previous words, this provision would have been entirely nugatory, if not intended (according to the plain import of the

language) to give her child or children as devisees of the testa-
tor, independently of their mother and not as her heirs, an
estate in fee simple. The testator gives it to her child or chil-
dren; if one only, to him or her solely—if more than one, to
them equally, to be divided between them, share and share alike;
which shows that he intended them to take as devisees, and did
not use the words as words of limitation. (*Tanner* v. *Living-
ston*, 12 *Wend.* 83. *Sisson* v. *Seabury*, 1 *Sumn.* 243. *Right
ex dem. Shortridge* v. *Creber*, 5 *Barn. & Cress.* 866. *Gret-
ton* v. *Hayward*, 7 *Taunt.* 94. *Lessee of Findlay* v. *Riddle*,
3 *Binn.* 139.) He also gives it to such child or children, and
his, her or their heirs and assigns, not the heirs and assigns of
his daughter. These superadded words of limitation show that
it was his intention that the child or children should take as
devisee or devisees; they were to be the new stock of inherit-
ance; the limitation was to *their* heirs. (*Tanner* v. *Living-
ston*, 12 *Wend.* 93. 1 *Vent.* 232. 4 *Kent's Com.* 221. *Lud-
dington* v. *Kime*, 1 *Ld. Ray.* 203. *Clerk* [*or Cheek*] v. *Day*,
*Moor*, 593. 1 *Ld. Ray.* 205. *Fitzg.* 24. *King* v. *Melling*,
1 *Vent.* 232. *Carpenter* v. *Smith*, 3 *Keble*, 123. 4 *Kent's
Com.* 221. *Lessee of Findlay* v. *Riddle*, 3 *Binn.* 139.) If the
words "child or children" had been synonymous with the word
"heirs," these superadded words of limitation would have been
tautologous, and would have no effect. Another consideration
in itself decisive is, that this gift to her child or children was
to take effect, if his daughter should die before or after the tes-
tator's decease. To effectuate this purpose, it is absolutely
necessary to construe these words as words of purchase, not
words of limitation; this must have been the testator's inten-
tion; for in case of her death, leaving a child or children while
the testator was living, such child or children could not have
taken under this provision if these were words of limitation,
but there would have been a lapsed devise. (*Rogers* v. *Rogers*,
3 *Wend.* 503, 513. *Doe ex dem. Turner* v. *Kett*, 4 *T. R.* 603.
*Brett* v. *Rigden*, *Plowd.* 340, 345. *Goodright* v. *Wright*, 1
*P. Wms.* 398.) This is conclusive; it is impossible to con-
strue these words as words of limitation, consistently with the

express declaration of the testator, that, in case of her death be-fore his decease, her child or children (if she left any surviving him) should take the property in fee. If the effect of any one of these provisions, to render the rule in *Shelley's case* inappli-cable, were dubious, yet such doubts cannot extend to all of them. At all events, the concurrence and joint operation of all of them, taken in connection and together, must incontestably prove the intention of the testator, which being a lawful inten-tion must govern in this case, ( *Ginger ex dem. White* v. *White, Willes' R.* 350, 351,) that if his daughter should leave a child or children at her death, such child or children should take an estate in fee. (3.) This construction agrees with the conclusion which any man of plain common sense would draw from the language of the will, and which the testator undoubtedly must have supposed and intended should be drawn. It harmonizes with, and is corroborated by, the corresponding provisions made by the testator in favor of the children of his other daughters, Mrs. Harvey and Mrs. Prowitt, in the first and second clauses of his will. The children of each of these daughters was to take the fee in the property in which their respective mothers had a life interest. If either of them died without issue sur-viving her, the property was given to the other daughters. So it was in the case of Margaret Thornton Mackaness. It is ob-vious that it was the intention of the testator to put his three daughters and their respective children substantially upon the same ground.

II. It is clear, therefore, upon the whole view of the will, as well as upon a critical examination of the fourth clause, that Mrs. Chrystie, having survived her mother, and being the only surviving child, took, under the will and as the devisee desig-nated by the description, " a child of Margaret Thornton Mack-aness," a fee simple absolute in the premises in question.

III. The decision of the judge was, therefore, not erroneous.

IV. The question, what estate is given in the fourth clause to Mrs. Harvey and Mrs. Prowitt, or their children, does not fairly arise, and need not be determined. (1.) If Mrs. Ludlow had died without children, it might have been necessary to de-

termine that question, but as that contingency has not happened it seems idle to discuss it.   Where there is a contingency with a double aspect, or in other words, where there is a valid limitation over in one contingency, and in case that contingency does not happen, there is an alternative limitation over upon another contingency ; if the first contingency happens, it is immaterial whether the latter be valid or not; for its invalidity cannot affect the other limitation. (*Longhead d. Hopkins* v. *Phelps,* 2 *W. Black.* 704.   *Crompe* v. *Barrow,* 4 *Ves.* 681, 686.   *Crump d. Wooley* v. *Norwood,* 7 *Taunt.* 372.   *Minturn* v. *Wraith,* 13 *Sim.* 52, 62.   *Gower* v. *Grosvenor, Barnard. Ch. R.* 60.   1 *Pow. on Dev.* (*by Jarman,*) 401, *n.*)   (2.) It is not admitted, however, that there is the least reason to doubt the validity of the contingent limitation in this clause to Mrs. Harvey and Mrs. Prowitt and their children, or that there is any difficulty in determining what would have been its legal effect.   It clearly was not a limitation upon an indefinite failure of issue.   It depended upon the double contingency of Margaret Thornton Mackaness dying unmarried and without issue surviving her, which could not have happened after her death. Although the court will construe the word *and* as synonymous with the word *or,* when necessary to effectuate the testator's intention, they will never do so when it will render the devise illegal or defeat such intention. (*Doe d. Baldwin* v. *Rawding,* 2 *B. & Ald.* 441.   *Doe d. Everitt* v. *Cooke,* 7 *East,* 269. *Doe d. Davy* v. *Burnsall,* 6 *T. R.* 30, 34.   *Jackson d. Burhans* v. *Blanshan,* 6 *John.* 54.   *Sayward* v. *Sayward,* 7 *Greenl.* 210, 216.   *Chapman* v. *Brown,* 3 *Burr.* 1634.   *Fonnereau* v. *Fonnereau,* 3 *Atk.* 318.)   But even if the word *or* had been used instead of the word *and,* there remains conclusive evidence that the gift over was not to be upon an indefinite failure of issue.   The contingency mentioned is Margaret's dying *without leaving a child her surviving ;* in which case there is a devise to Mrs. Harvey and Mrs. Prowitt, as tenants in common in fee, or if either of them shall at Margaret's death be dead, and shall have a child *then living,* then the devise is to *such child,* that is, the child living at Margaret's death.   These circumstances

prove that the testator did not contemplate an indefinite failure of issue, but intended to provide only for a contingency at the time of Margaret's death.   (3.) It is clear from these considerations that the estate given to Margaret would not have been an estate tail previous to the law abolishing such estates; and if this were at all doubtful, the court should presume, in case of a will made after such law was in force, that the testator did not intend to create an illegal estate.   (*Rogers* v. *Rogers*, 3 *Wend.* 503, 514.   *Tanner* v. *Livingston*, 12 *id.* 93, 94.   *Lethiullier* v. *Tracy*, 3 *Atk.* 797.)   (4.) Upon the whole, although the will was not drawn with artificial nicety, there is no difficulty in ascertaining the meaning of this clause and determining its effect, so far as it may be necessary to do so in this cause.   The testator gave his daughter Margaret Thornton Mackaness an estate in fee simple, subject to an executory devise in fee simple, to any child or children who might survive her; or if she had no such child, subject to an executory devise to her sisters, if living, or (if either of them should be dead, leaving a child or children then living,) to such child or children.   There were, therefore, two contingencies contemplated and provided for by the testator, and if either of them happened, the estate in fee devised to his daughter was to cease, otherwise it would be absolute.   The first contingency has happened.   The testator's daughter Margaret has died, leaving a child who survived her; that child, under the executory devise in her favor, then took an estate in fee simple absolute, and she and her husband became entitled to the immediate possession of the lands.   As this was withheld from them by the original defendant, they brought this action, and are entitled to judgment.

V. The judgment therefore should be affirmed, with costs.

Roosevelt, J.   The plaintiff, Mrs. Chrystie, who was the granddaughter of Thomas Mackaness, deceased, claims under a devise or gift, in her grandfather's will, to be the owner of the house and lot known as No. 192 Fulton street, lately occupied by Duncan Phyfe, deceased.   Phyfe died in possession of the premises in the year 1854, holding under a deed in fee, containing

Chrystie *v.* Phyfe.

full covenants, executed to him in 1815 by Mr. and Mrs. Ludlow, the father and mother of Mrs. Chrystie the claimant. The case presents a question of title merely, depending for its determination, not on any disputed fact, but on the construction to be given as matter of law to Mackaness' will, which was made and took effect long prior to the adoption of the revised statutes, and which therefore is to be interpreted, if necessary, according to the principles of the old system. Mackaness it appears had a wife and three children, all daughters. Two of them, Mrs. Harvey and Mrs. Prowitt, had husbands; the other, Margaret, although she married afterwards Mr. Ludlow, was at the date of her father's will a single woman. As to the two married daughters, he of course knew the circumstances of their husbands; as to the third, the unmarried one, he was left to conjecture, but entertained, it would appear, higher hopes and greater faith.

Thus situated in his family, Mackaness about fifty years ago made his will, dividing his estate into three allotments. To Mrs. Harvey, one of his married daughters, he gave his house in Front street "during the term of her natural life," with remainder in fee to her children, if any, and if none, to her sisters or their children; subject to the husband's use, if surviving, "during his natural life." To Mrs. Prowitt, the other married daughter, in whose husband's affairs he seems to have had a little less confidence, although he made him a trustee, he gave the income of his dwelling, brewhouse and malthouse in Barley street, "for her own sole and separate use," "during the natural life of his said daughter," with remainder in fee to her children or her sisters, as the case might be; but with no reserved benefit in favor of her husband. These provisions, thus briefly stated, in respect of his two married daughters, are carried out with perfect clearness and with great particularity and minuteness of detail, in the first and second articles of the will. In the next he gives his homestead in Orange county, with all the horses, cattle, &c. to his wife and unmarried daughter during their joint natural lives and the life of the survivor; and if his said daughter should be the survivor, then (on her mother's

death) to her and "her heirs and assigns forever"—in other words, giving her as to the farm a conditional fee, determinable if she died before her mother.

In the 4th article, still carrying out the distinction between Margaret and the other daughters, he gives her the house now in controversy in Partition street, to her and to "her heirs and. assigns forever," with this qualification, however, that if she died "unmarried and without leaving a child her surviving," (as she left a child, Mrs. Chrystie, born in wedlock, this condition is of no direct importance,) then all her share of his estate, both real and personal, was to go to her sisters or their children, as the case might be. Here then again was a conditional fee, depending upon Margaret's first having, (which could only be if she married,) and then leaving, a lawful child. Unlike her sisters, whose interest in their allotments was in every event merely for life, and could in *no event* be raised to a fee, her estate was in perpetuity, with full power to "assign," that is (for such is the legal meaning of the word "assigns,") to convey, either by will or deed, to whom she pleased, in fee simple, with no possibility of being reduced to a mere life estate, except in the *one event* of her leaving no child. Her *sisters'* children were to take in remainder as direct devisees or legatees of their grandfather; *her* children, if at all, as "heirs" of their mother, and of course (like heirs in any other case of ownership in fee) subject to their mother's acts in her lifetime. All persons, whether lawyers or laymen, at all conversant with real property, understand that where a piece of land is given or conveyed to a man and his heirs, or his heirs and assigns, he may dispose of it in his lifetime or at his death, to the exclusion of his heirs, whether descendants or collaterals. The use of the term assigns by the testator in the present instance shows that he so understood the law, and that he so intended. While withholding expressly the power to sell, as to the fee, from the two married daughters, he gave it as expressly to his unmarried daughter Margaret. When therefore, as Mrs. Ludlow, she conveyed in fee to Mr. Phyfe, she did nothing but what her father contemplated and permitted; and Mr. Phyfe, on his part, incurred

no risk of dispossession, except what resulted from the possibility that all the children of Mrs. Ludlow might die before her —a risk which he took the precaution to guard against, in some degree at least, by requiring Mr. Ludlow to execute a warranty of title. But Mrs. Ludlow, as already stated, did marry, and at her death did leave a child. Had the will, therefore, stopped at this point, there could be no question—none at least of any serious difficulty—and no suit it is probable would have been thought of. The birth and survivorship of Margaret's child, (now Mrs. Chrystie, one of the plaintiffs,) instead of raising up, as it has done, an adverse claim, would have been the very means prescribed by the will for perfecting the title of Margaret's grantee.

The 4th article, however, does not stop here. The draftsman was a lawyer, and although not perfectly artistic in his work, he knew that thus far he had assumed that Margaret, the devisee, would live to take her father's bounty, and that as the law then stood, if the assumption failed and she died before him, her children, even if she left any, would not take in her stead, but be excluded on the ground of its being a lapsed devise. True, the testator in such case might make a codicil; but testators are apt to forget. It was safest therefore, or was supposed to be, to anticipate such a possibility and provide for it in the will. . He had already, as we have seen, made all the provision he desired for the case of her taking the property, after him, and then dying herself, (the usual course of nature,) giving it in that case to her children, if any, through her, and as her heirs at law. He now simply adds, that if she died before him and left children living at his decease, they should take in fee that which had been intended for their mother. But the draftsman, unfortunately, in expressing this idea, tempted no doubt by the love of more sonorous periods, used the expressions " if my said daughter Margaret Thornton Mackaness shall die, either before or after my decease, leaving lawful issue, then I do give, devise and bequeath the part and parts, share and shares, of my real and personal astate by this my will given, devised and bequeathed to her, unto such child or children, &c. their heirs and assigns forever," &c. Literally, this language, it

must be admitted, applies to the case of Margaret's death leaving issue, whether before or after her father's. But so applying it, the result would be not to modify but to nullify the provisions already made; and in the very same sentence, to convert that which in a certain event he had intended to be, and which in the ordinary course of things would be, an absolute fee simple, into a mere estate for life, and which in no event could be of longer duration than life.

In the interpretation of legal instruments, as of other writings, it is our duty to reconcile them if practicable. An author, whether it be of a book or a will, is not to be presumed to intend, especially in the very same sentence, to contradict himself. This rule is well established both upon authority and common sense. If any thing in this will be clear, it seems to me, it is clear that the testator did not intend that his daughter Margaret, as the plaintiffs argue, should take a mere estate for life and nothing more. She was in some event certainly to take a fee. How then, it may be asked, are the expressions, "either before or after my decease," just quoted, to be reconciled? They are, I conceive, to a great extent surplusage; they are as much as to say, I have already, in case of my daughter Margaret's death *after me* leaving issue, given her portion to them as her "*heirs ;*" and I now, in case of her death *before me* leaving issue, give it to them in like manner, as far as may be, as her *substitutes*, so that "if she shall die either before or after me leaving issue," such issue, as heirs or as substituted devisees, will take her portion; if in the character of heirs, then subject, like other heirs, to their parent's disposition; if as substitutes, then subject, like other immediate devisees in fee, to no disposition but their own. The primary, and as it seems to me the only, object the testator had in view in the words just quoted, was to meet the possible event of his daughter's death before him, to prevent the lapse which in that event, as the law then stood, would otherwise have followed, and to give effect to a dictate of nature, so strong and universal, as to induce the legislature to interpose and to make a general provision in favor of issue, in all cases where the immediate object of a testator's

Chrystie *v.* Phyfe.

bounty, being a descendant, dies before the testator himself, but leaves issue who survive the testator.   (2 *R. S.* 66, § 52.)

The will in question, although somewhat inartificial, was obviously drawn by a lawyer.  He knew this rule of the old law, in full force when the instrument was framed.  He knew that Miss Mackaness, whether she died before her father or after him, must either die childless or leave issue.  He had provided for both contingencies, whichever of them should happen after the testator's death ; giving his daughter not a life estate but an estate in fee simple, defeasible if she left no issue, and indefeasible if she did.  Why then should he provide for one of the same two contingencies again ?  Why, when he had just declared that in that precise contingency she should take an estate " to her and her heirs and assigns forever," why, I say, is he to be presumed to have intended that in that precise contingency, and every other, she should take, as the plaintiffs contend, an estate " substantially similar" to that of her sisters ; namely, for life only ?   If the provisons for all the three daughters were to be substantially similar, why were such great pains taken to distinguish them ?   It is palpable that the descendants of Margaret, in some event, were to take as " her heirs ;" whereas, by the plaintiffs' construction, they could take as heirs in no event.   It is equally palpable that she was in some event to have the power of " assigning" the fee ; whereas, if only a life tenant, her conveyance would pass only a life estate, and that, in the language of the law, merely *pour autre vie.*   The whole argument of the plaintiffs' counsel proceeds upon the assumption, as stated by himself, that for each of the other daughters and their children he (the testator) made provisions substantially similar to those in regard to his daughter Margaret and her children ; whereas the whole will proceeds upon the idea that the provisions in the two cases were to be substantially different.   It is only necessary to read the will—the whole will, and not the mere detached parts relied on by the plaintiffs—to sustain the position that all the sisters were not to be placed on the same footing.   " This construction (I adopt the words of the plaintiffs' third point) agrees with

the conclusion which any man of plain common sense would draw from the language of the will, and which the testator undoubtedly must have supposed and intended should be drawn." He could not have imagined—no man of common sense could have imagined—that the words " to her and her heirs and assigns forever" would be construed as intended in no event to give a fee, and in every event to give only a life estate. He knew, of course, that his daughter Margaret must die, either with or without issue—that there was no other possible alternative in the nature of things; that therefore, if " her heirs and assigns," as such, were not to take if she left no issue, and were also not to take if she left issue, they were not to take in any event. And yet he had expressly given—and that in contradistinction to his other daughters—the house in question to Margaret " and her heirs and assigns forever." He had given her a fee of some kind. His language to that extent, whether tested by the professional or by the common understanding, is perfectly clear ; while to his married daughters it is undisputed that he gave only life estates. How then can it be said, as the plaintiffs' counsel contend, that " it is obvious that it was the intention of the testator to put his three daughters and their respective children substantially upon the same ground ?" Is a mere life estate, with no power of appointment by deed or will, substantially the same as a fee ? Or is an estate which certainly in some event was to go " to the testator's daughter and her heirs and assigns forever," substantially the same as an estate which in no event was to be held by the donee, or to be subject to her control, for a longer period than " during her natural life ?" According to the plaintiffs' fourth point, the devise to Margaret was " an estate in fee simple, subject to an executory devise in fee simple to any child or children who might survive her ; or, if she had no such child, subject to an executory devise to her sisters if living, or (if either of them should be dead, leaving a child or children then living,) to such child or children." The answer to this position, as already stated, is that it involves the absurdity of a fee, which in no event could go to the donee's "heirs" as such, or to the donee's "assigns"—a fee

Chrystie *v.* Phyfe.

unknown either to common law or common sense—a fee in direct contradiction of the ordinary as well as legal meaning of the terms which create it.

I have not gone into the technical matters which have been discussed by counsel, for the reason that assuming the views of the plaintiffs in regard to them to be correct, they do not affect the conclusion at which I have arrived, as to the intention of the testator; the guide which both parties very properly profess to follow in determining the construction to be given to his will.

In the recent case of *O'Reilly* v. *Sempill,* decided on appeal in 1855 by the court of last resort in England, the testatrix, in one codicil, gave the whole residue of her property to her cousin, " Lady Sempill and her heirs and assignees ;" and by a subsequent codicil, reciting that there was no prospect of her cousin having a child, "deponed and bequeathed as her successor," a niece named O'Reilly, " to succeed the said Right Honorable Lady Sempill in all her (the testatrix's) landed property, &c." The question was, says the reporter, whether the fee given to Lady Sempill by the first codicil was cut down to a life rent by the second. *Held* by both courts that it was not. The lord chancellor said the case "admitted of no reasonable doubt ;" that Miss O'Reilly was merely substituted in the place of Lady Sempill's " heirs," and like them would take on her death, if Lady Sempill should " do no act to defeat the destination of the property ;" that the devise over was " a mere *spes successionis* in Miss O'Reilly, which might or might not be of much value; that it was no doubt always of some value, but did not prevent Lady Sempill from exercising all the rights of ownership with regard to the property." Lord Brougham said he had " no doubt as to the case, any more than his noble and learned friend." Lord St. Leonards added that he agreed with the lord chancellor and Lord Brougham, "and had no doubt that the court below came to a correct conclusion." " The estate (by the 2d codicil) was not removed out of Lady Sempill; the fee was not cut down in that way." What a child, had there been one, would have taken as heir, was to go to Miss O'Reilly " as the successor in the place of the child," and " subject to

the disposition of Lady Sempill herself." (2 *Macqueen's Rep.* 288.) The result is,. that Mrs. Ludlow took an estate in fee, defeasible by law in the event of her dying before her father, and defeasible by will in the event of her dying after him, leaving no issue. Having survived her father, and having left issue, her estate in fee both vested and became absolute in her, and as a consequence in her grantee, Mr. Phyfe.

Judgment should therefore be entered for the defendants.

WHITING, J. concurred.

CLERKE, J. (dissenting.) I. The rule that, in the construction of wills, they are to be expounded so as to pursue as far as possible the intention of the testator, is, in our law, universally recognized. In the language of Coke, the intention is the pole-star to · guide the judges; but, it is also conceded, with equal unanimity, that this intention must be collected from the language of the instrument—not from any extraneous reports and evidence concerning it, except in the instance of a latent ambiguity; and, where it does not clearly and with reasonable certainty disclose the intention, the court must have recourse to the rules of strict legal interpretation, and must be exclusively guided by them. The construction must not depend upon probabilities, upon the private belief, the conjectures, or the speculations of the judges, however plausible or. ingenious, or however conducive to a benignant result; but it must be derived from the instrument itself—not from a fragment, but the whole of it; so that the words may stand together, without repugnance or contrariety. Does the will now before us, taken as a whole, clearly and satisfactorily disclose the intention of the testator in relation to the interest devised to his daughter Margaret Thornton Mackaness, afterwards Mrs. Ludlow, so as to dispense with the necessity of conjecture or speculation?

If it is affirmed that the employment of the technical words of inheritance, in the first clause of the article, is conclusive proof of his intention, may it not be affirmed with equal if not greater force, that the three limitations over, in language

equally positive, disclose quite a contrary intention, with the additional advantage that they are subsequently declared ?

It is again affirmed that he distributes other real estate among his daughters, who were married, *in express terms during their natural lives,* while he makes use of words of inheritance only in the devise to his daughter Margaret. But, if by giving to the limitations over, in the fourth article, their full force, the same interest would be given substantially to his daughter Margaret, that he has confessedly given in other articles to his other daughters—that is a life interest—may it not be affirmed, with quite as much plausibility, that this discloses an intention to place his three daughters, and their respective children, on the same ground, and that it was nothing but the technical verbosity or the obtuseness of his lawyer, which caused any variation in the language of the will.

I confess that I cannot discover any thing in the diction or tenor of this instrument to afford me any unquestionable assurance of the intention of the testator, respecting the devise to his daughter Margaret. I may form a belief; I may surmise; I may indulge in conjecture approximating to the truth ; but this the law, for the wisest reason, does not permit—for the same reason, indeed, that it leaves as little as possible in the administration of justice, to depend upon the caprice or mere speculation of its dispensers and interpreters. Abandoning, therefore, any attempt to ascertain the intention of the testator, independently of the strict rules of legal interpretation, we must confine ourselves, exclusively, to the light which those rules afford.

What, then, according to established rules of construction, and to the principles of the common law existing at the time of the death of the testator, was Mrs. Ludlow's interest in the property in question ?

II. I differ from the plaintiffs' counsel with regard to the precise nature of the limitations over. I do not think they create an executory devise. An executory devise, limited on any intervening freehold estate, must be limited on a fee, vested in a person, and to be vested in another by contingency. If the future estate is limited on a life estate, it is not an executory

devise, but a contingent remainder. The fee in an executory devise is determinable in the first taker, and on a defeasance of the fee, or the happening of the contingency, the executory devise takes place ; but, if the contingency should not happen, the fee may become absolute in the first taker. As, where a testator devised to A. and his heirs forever, and if he should die without issue in the lifetime of B., then B. to have the lands, to him and his heirs forever. In this case A. took a vested fee simple, the limitation over to B. being good as an executory devise, to take effect on A.'s dying without issue, in the lifetime of B. There is another kind of executory devise, as where the fee does not pass at once by the devise, but until the contingency happens, descends to the heirs of the devisor. Thus a devise to the first son of A. when he shall have one, is good as an executory devise ; and the inheritance, in the mean time, descends to the heirs of the devisor. The first, however, is the only one that can be regarded as analogous to the case now before us. According to the first definition and example, it will be readily perceived, if the contingency should not happen, that is, if A. should die leaving issue, or should die without issue after the death of B., the estate goes to the heirs of A. *by descent*, and not by virtue of the devise, or, to speak more technically, *by purchase*. The fee becomes absolute in the first taker, in the person of his heir.

Now, if any effect is to be given at all to the limitations over, in the will before us, (and of course, on the theory of the plaintiffs' counsel, effect must be given to them, else his whole argument falls,) the fee could never become absolute, under any circumstances, in the first taker or his heirs, (as heirs.) These limitations provide, in substance, that if Miss Mackaness should die unmarried, *without leaving lawful issue*, the estate shall go to her sisters, their heirs and assigns forever ; if she should die *leaving lawful issue*, then to such child or children, his, her or their heirs and assigns forever ; and in case Miss Mackaness should die without lawful issue, and if at her death her sisters should not be living, the will provides that the estate shall go to the children of the said sisters, their heirs and assigns forever. By no possibility, therefore, by virtue of this

devise, if these limitations are not to be totally rejected, could a fee vest in Miss Mackaness ; and, without this, without the possibility of the fee becoming absolute in the first taker, as I have shown, the limitations over cannot be legally denominated executory devises. The law is reluctant to construe any future estate to be an executory devise, that can fairly be deemed a contingent remainder. I think, therefore, the counsel for the plaintiffs mistook their ground in insisting, as the basis of their argument, that the devise belongs to that denomination of future estates.

III. But does it necessarily follow that these limitations over are to be held as ineffectual, and as belonging to no description of future estates ? Are there no legal principles which can determine the character of this devise, in the absence of any light, which the will itself satisfactorily affords in relation to the testator's intention ? It is maintained by the counsel for the defendants, that by the first sentence of the fourth article of the will, Miss Mackaness was invested with an absolute and indefeasible title in fee. It gives the estate to her, " *her heirs and assigns forever.*" These are clearly and undoubtedly words of absolute inheritance ; and if no words of limitation over, no words of qualification or restriction followed, her title would have been indisputable, and her power of alienation would have been complete. But I think the entire fallacy of the defendants' argument rests upon the assumption that these words are to be taken in their unqualified sense, unaffected by the subsequent provisions of the article. It is a rule of construction, that it be made upon the entire instrument, and not upon disjointed parts of it. In a deed, doubtless, if there are two clauses so totally repugnant to each other that they cannot stand together, the first shall be received and the latter rejected ; but with regard to a will the rule is different ; for if there are two such repugnant clauses, the latter shall stand. Every word of a will, not inconsistent with the general intent, ought to have effect given to it ; but if two passages are totally inconsistent, the last must prevail. Indeed, ambiguous words in one passage cannot control another passage which is unequivocal. But is the lan-

guage of the limitations over in this case equivocal? On the contrary, it is perfectly explicit, quite as much so as that of the first passage. True, in the first passage, the testator gives and devises this property to his daughter Margaret Thornton Mackaness, "*her heirs and assigns forever ;*" but it is equally true, that he gives, devises and bequeaths the same property to his daughters Elizabeth Harvey and Mary Prowitt, "their heirs and assigns forever," in case his daughter Margaret should die unmarried without lawful children ; and if leaving lawful children, he gives and devises it to such children, and to make it still more certain that her heirs should not have it as her representatives, he gives and devises it to the children of his daughters Mrs. Harvey and Mrs. Prowitt, in case Margaret should die leaving no lawful children, and if at her death Mrs. Harvey and Mrs. Prowitt should be dead. So that, if it is insisted that absolute effect must be given to the words of inheritance, without reference to what follows, it may be insisted with much greater force, that absolute effect must be given to the limitations over without reference to what goes before. It is a mistake to suppose that *the mere employment of the ordinary technical words of inheritance, peremptorily and positively imparts a fee, in defiance of subsequent words of qualification and limitation.* (*Bradstreet* v. *Clarke,* 12 *Wend.* 602.) In such case, the words of inheritance require something additional, imparting a power of absolute dominion and alienation, to countervail the effect of the subsequent words. This has no doubt been required in order to show indubitably that the testator was not mechanically using words, employed technically by his legal adviser, of the full import of which he was not sufficiently aware, and of which he was not likely to be aware. We shall find this satisfactorily illustrated in *Jackson ex dem. Brewster* v. *Bull,* (10 *John.* 19.) B. by his will, after devising a certain lot of land to his son Moses, *his heirs and assigns forever,* declared as follows : · " in case my son Moses should die without lawful issue, the said property, *he died possessed of,* I will to my son Y. H." There the limitation over was considered void, not however *because the first clause unqualifiedly imported an absolute fee,*

*independently of the subsequent clause,* but because the words
" *died possessed of* " imported an absolute power of alienation,
and therefore, *and not otherwise,* the limitation over was re-
pugnant.    The court, in their opinion, refer to the case of *The
Attorney General* v. *Hall,* (*Fitzg.* 314,) to show that the
words " died possessed of " implied a power of alienation by the
devisee ; and it necessarily follows, that without these words or
some similar words, the mere naked words of inheritance would
not imply any such power, where there was a limitation over in-
consistent with these words.    The court further remark, " that
Lord Hardwicke has given his sanction to the accuracy of that
case, and to the authority of that decision, (1 *Ves.* 9,) and the
supreme court of Massachusetts in the case of *Ide* v. *Ide,*
(5 *Tyng,* 500,) have made a similar decision in a like case,
upon the same authority.    In that case, after an absolute devise
of real and personal estate to the son, the will adds, that if he
should die and leave no lawful heirs, *what estate he shall leave*
to be equally divided, &c."    The limitation there was held to
be repugnant and void; *though it was admitted, that without
that clause the words " what estate he shall leave," it would
have been good as an executory devise."*    This principle is fully
recognized in the several cases arising out of the construction
of Lord Sterling's will, in the supreme court and court of errors
of this state, and in the last of those cases (*Jackson* v. *Robins,*
16 *John. R.* 537,) in the court of errors, the chancellor, in his
opinion, reviews the case of *Jackson* v. *Bull,* and the cases there
referred to, clearly confirming the principles, and recognizing
the distinctions which those cases advance.    The case of
*O'Reilly* v. *Sempill,* (2 *Macqueen's R.* 288,) cannot be consid-
ered analogous to a case like the present, where the words of
inheritance are placed in opposition to *limitations over,* couched
in the strict terms of the common law.    That was a Scotch case,
decided on principles of a jurisprudence different from ours or that
of England, on appeal to the house of lords.    It decides that,
where by a codicil of the will of the testatrix, an estate in fee
simple was constituted in A., a subsequent codicil merely saying
that B. should be the *successor* of A. should not cut down into

a life rent the fee simple of A. " *Merely saying that B. should be the successor of A.*" is a very different thing from giving and devising the estate to B., her heirs and assigns forever, on the death of A., whether A. should die with or without issue. Besides, such a decision in the house of lords cannot be of much importance here, if it contravenes all that has been held, as law, upon the same subject in our own courts.

While, therefore, I deny that the limitations over, in this will, create an executory devise, yet I am of opinion that Miss Mackaness, afterwards Mrs. Ludlow, took no absolute fee in the estate, notwithstanding the words of inheritance in the first clause of the article ; that those words are divested, by the subsequent clauses, of their usual efficacy, and that the limitations over reduced her interest to an estate for life ; and, at her death, an absolute fee vested in her daughter, Mrs Chrystie.

With regard to the point urged by the defendants' counsel, that the words, "shall die leaving lawful issue," import necessarily an indefinite continuance of issue, thus creating an estate tail, it is clear that the gift over was not to the issue of Miss Mackaness, merely in their capacity as her inheritors, but as devisees of the testator—not as her representatives or successors, but as his beneficiaries —not as heirs, but as original devisees ; for the gift was to take effect, whether his daughter should die before or after his decease, and therefore, if there were no other objection, the rule in *Shelley's case* could not apply, nor could the estate have been considered an estate tail.

I am of opinion that the judgment of the court below should be affirmed, with costs.

Judgment reversed.

[NEW YORK GENERAL TERM, September 8, 1856. *Roosevelt, Clerke* and *Whiting,* Justices.]